UNITED STATES of America, Plaintiff,

v.

BEDFORD ASSOCIATES, a Partnership, Doris K. Carver and Samuel Ades, individually and as partners of Bedford Associates, and Amcar Management Corp., Defendants,

and

The Bowery Savings Bank, Intervenor.

The BOWERY SAVINGS BANK, Plaintiff,

v.

BEDFORD ASSOCIATES, a Partnership, Doris K. Carver and Samuel Ades, individually and as partners of Bedford Associates, and United States of America, Defendants.

Nos. 79 Civ. 1522 (HFW), 79 Civ. 1482 (HFW).

United States District Court, S. D. New York.

July 23, 1982.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for the U. S.; William J. Brennan, Harvey J. Wolkoff, Asst. U.S. Attys., New York City, of counsel.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for Bedford; Frank H. Wohl, Douglas N. Gordon, Eugene A. Gaer, Douglas J. Clubok, New York City, of counsel.

Cadwalader, Wickersham & Taft, New York City, for the Bowery; Terence F. Gilheany, Howard R. Hawkins, Jr., John F. Mariani, New York City, of counsel.

## OPINION

WERKER, District Judge.

These consolidated cases involve the adjudication of the rights and liabilities of Bedford Associates as owner-mortgagor, The Bowery Savings Bank as mortgagee, and the United States government as tenant of the 21 story office building located at 120 Church Street, in New York City. The background of these cases is contained in the prior opinions of this court and the Court of Appeals for the Second Circuit. *United States v. Bedford Associates,* 618 F.2d 904 (2d Cir. 1980), *on remand,* 491 F.Supp. 848 (S.D.N.Y.1980) and 491 F.Supp. 851 (S.D.N.Y.1980), *aff'd in part, rev'd in part and remanded,* 657 F.2d 1300 (2d Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982), *on remand,* 548 F.Supp. 732 (S.D.N.Y.1982). Reader familiarity with the opinions is assumed.

After the plenary trial in these consolidated actions, this court entered judgment quieting title to the premises at 120 Church Street in Bowery, foreclosing Bowery's mortgage against Bedford and the United States and ordering the assignment of rents to Bowery. *United States v. Bedford Associates,* 491 F.Supp. at 870. This judgment was affirmed by the Court of Appeals. *United States v. Bedford Associates,* 657 F.2d at 1315.

Pursuant to the judgment of this court filed on June 9, 1980 and order of this court filed on December 1, 1981, this matter was referred to Eugene P. Souther, Esq. to hear and compute the amounts due to Bowery in principal, interest and other charges due under Bedford's mortgage on 120 Church Street. The referee was further authorized to examine and report whether the mortgaged premises may be sold in parcels. Proceedings were duly held before the referee and his report was filed with the court on May 14, 1982. By motion returnable June 23, 1982, Bowery moved to confirm the Report of the Referee in all respects and for an order pursuant to 28 U.S.C. § 2001, directing the entry of an order and judgment of sale.

In an opinion dated July 7, 1982, this court granted Bowery's motion to confirm with respect to the amounts due to Bowery for unpaid mortgage principal, interest and late charges. The court granted judgment for Bowery against Bedford in the amount of $10,742,543.06 for total unpaid mortgage principal, interest and late charges, less suspense credit and working capital, as of November 1, 1981. As both Bedford and the government vigorously objected to the referee's findings with respect to attorney's fees, disbursements, charges and expert witness fees, Bowery's motion to confirm the report of the referee with respect to reasonable attorney's fees, disbursements, charges and expert witness fees was to be the subject of a separate opinion.

This is the opinion with respect to the fees to be allowed to Bowery under the terms of its mortgage with Bedford providing that it be allowed reasonable attorneys' fees and statutory costs, disbursements and allowances. Under Fed.R.Civ.P. 53(e)(2), the court must accept the Referee's findings of fact unless "clearly erroneous." After a review of Bowery's time sheets in this matter and the applicable statutory provisions with respect to costs, it is the judgment of this court that the findings of the Referee are clearly erroneous and cannot be sustained.

■ Paragraph 12 of the mortgage agreement between Bedford and Bowery provides:

> If any action or proceeding be commenced by or against the Mortgagee, including an action to foreclose said mortgage, affecting said premises or the lien of said mortgage, the Mortgagee may appear, defend, prosecute, retain counsel, and take such action as the Mortgagee shall deem advisable, and the costs there-

of (including reasonable counsel fees and all applicable statutory costs, allowances and disbursements) together with interest thereon at the rate equal to the higher of (i) the legal rate or (ii) the mortgage rate set forth herein plus ½ of 1%, but in no event in excess of the maximum rate permitted by law, shall be paid by the Mortgagor to the Mortgagee on demand and shall be secured by said mortgage.[1] (1975 Mortgage Modification, A. 1523).

Bedford argues that the language of ¶ 12 which limits an award of fees and expenses to actions or proceedings commenced by or against the mortgagee precludes recovery by Bowery of fees and expenses incurred in connection with its intervention in the government's action against Bedford since no claims were asserted against Bowery and since Bowery filed no pleadings in that action.

In my opinion, the language of ¶ 12 contemplates an award of fees and expenses to Bowery in connection with its intervention in the government's suit against Bedford. Bowery's action against Bedford was commenced the day before the government's action against Bedford was commenced, and included both a quiet title claim and a foreclosure claim. Bowery alleged that the government had no leasehold interest in the premises and that even if such a leasehold interest existed, the United States' interest was subject and subordinate to Bowery's mortgage. Thus, Bowery's quiet title claim posed the same underlying issue with respect to the validity of the lease as the government's action for damages for breach of the alleged lease. Indeed, Bowery was permitted to intervene in the government's action in part because of the identity of these issues and these cases have been con-

---

1. The mortgage agreement also provides:
   Said mortgage is and shall be and remain also a lien on, and is hereby spread to cover all awards heretofore and hereafter made by reason of the taking by eminent domain of the whole or any part of said premises or of any right appurtenant thereto, including any awards or payments for use and occupation ... which awards are hereby assigned to the Mortgagee, which is hereby irrevocably au-

   thorized and appointed attorney-in-fact of the mortgagor to collect and receive any such awards from the authorities making the same [and] to appear in any proceeding therefor ...; and the Mortgagor ... will reimburse the Mortgagee for its costs (including reasonable counsel fees) in the collection of such awards. (1975 Mortgage Modification, A. 1522).

solidated virtually from their commencement. Accordingly, under the circumstances presented here, it is the opinion of this court that an award of fees and expenses incurred by Bowery in connection with Bowery's intervention in the government's action against Bedford is contemplated under the terms of ¶ 12 of the mortgage and is fully justified.

The fees, costs, disbursements and allowances claimed by Bowery through November 1, 1981 are $482,750.88. The Referee appointed to hear and compute allowed the claim in the amount of $420,535.44.

■ Under the terms of ¶ 12, Bowery is entitled to recover from Bedford its *reasonable* counsel fees. Reasonable attorneys' fees in my opinion are such as are necessary to accomplish the end sought considering the skill and experience of counsel, the magnitude, complexity and novelty of the litigation, the respective positions of the parties in the litigation and the extent of responsibility legitimately undertaken by counsel. *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); *National Commercial Bank v. Farina's Market, Inc.*, 95 Misc.2d 284, 285, 406 N.Y.S.2d 979, 980 (Sup. Ct. Albany County 1978). After a review of the record before the Referee, I must conclude that both the amounts claimed by Bowery and those allowed by the Referee are excessive and not contemplated within the language of the mortgage instrument.

■ In this case, the end sought by Bowery was the foreclosure of a mortgage free and clear of any cloud upon the title. The primary issues its counsel, the firm of Cadwalader, Wickersham & Taft ("Cadwalader") should have been concerned with and were required to assume active responsibility for during the course of the litigation are:

1. Jurisdiction under 28 U.S.C. § 2409a, Referee Tr. at 285–86;

2. The nature of Bowery's involvement in the negotiations between Bedford and the government for a new lease. Referee Tr. at 291.

3. Proof of the amount due upon Bedford's default under the mortgage. Referee Tr. at 287.

While I do not criticize the hourly rates charged by partners and full-time associates in this matter, I do find that the number of people working on this case and the number of hours charged were excessive in light of the objectives to be achieved and the narrow scope of Bowery's essential participation in the proceedings including the two trials and the two appeals. The claimed amounts involve at least 24 attorneys who were in one way or another involved in this action. There is no doubt that duplication and excessive time were involved. *See* Referee Tr. at 277–344.

For example, there were numerous issues with respect to which the positions of Bedford and Bowery coincided and the number of hours billed with respect to those issues by Cadwalader cannot be justified since it was Bedford's primary responsibility to handle those issues. These include the questions of (1) the government's entitlement to a preliminary injunction against Bedford, Referee Tr. at 280, (2) the validity of the lease and (3) whether the government was entitled to specific performance of the lease. Referee Tr. at 293–94, 296–297, 320–21, 324. There were other issues with respect to which Bowery encountered no real opposition. These include the questions of (1) an assignment of rents to Bowery, Referee Tr. at 279–80, (2) that the mortgage was in default, Bowery Tr. at 287, *See* Tr. at 277–280, 287, 290–94, and (3) with the exception of a reasonable attorneys' fee, the amounts due under the mortgage upon default. Referee Findings of Fact and Conclusions of Law at p. 2. Finally, there were issues with respect to which the time expended by Cadwalader attorneys was duplicative and excessive. These include (1) research and preparation of memoranda and briefs on the questions of (a) jurisdiction under 28 U.S.C. § 2409a, Referee Tr. at 324–25, 332–38, (b) Bowery's status as an intervenor, Referee Tr. at 329, and (c) the standard of review on appeal, Tr. at 331–32, and (2) time spent in familiarizing numerous Cadwalader associates with the case. Referee Tr. at 340.

The Referee found that the services rendered by Cadwalader in connection with many of these matters were not duplicative because Bowery could not reasonably be expected to forego addressing certain legal issues simply because Bedford might be making a similar argument. In view of the statements made by counsel for Cadwalader at the hearing before the referee and the foregoing analysis, however, I must conclude that this finding was clearly erroneous.

With respect to the partners of Cadwalader who worked on this matter, it is clear that Bedford could not anticipate the cost of having a litigation, real estate and banking partner participate in a foreclosure and that the participation of the non-litigation partners was wholly peripheral to the matters pending before the court. *See* Referee Findings of Fact ¶¶ 13–14. Accordingly, the amounts allocated to other than the litigation partner are disallowed in their entirety. In addition, I find that the litigation partner's hours were excessive and accordingly, Bowery may recover fees for the legal services performed by this partner only to the extent of 750 hours at $140.65 per hour for a total of $105,487.50.

Fifteen full-time associates, five summer associates, and various legal assistants of Cadwalader worked on these consolidated cases through November 1, 1981. In my opinion, the staffing of this action in this manner was altogether unnecessary and resulted in duplicative charges. *See* Referee Findings of Fact ¶¶ 21, 33, 34 & 37. Accordingly, fees for associates of Cadwalader working on this matter are allowed as follows:

1. Howard F. Hawkins: 900 hours at $85.78 per hour for a total of $77,202.
2. Terrence J. Connolly: 250 hours at $57.46 per hour for a total of $14,365.
3. John F. Mariani: 60 hours at $86.01 per hour for a total of $5160.60.
4. Paralegals: 150 hours at cost as reflected by the wages actually paid them. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 473 (2d Cir. 1974); *City of New York v. Darling-Delaware,* 440 F.Supp. 1132, 1136 (S.D.N.Y.1977).

In accordance with the above, Bowery is entitled to recover its attorneys' fees in the sum of $202,215.10 plus an amount due for paralegals as set forth above for the period between the commencement of this litigation and November 1, 1981. All requests for fees for the remaining associates, summer associates, legal assistants, the managing attorney and his staff are disallowed as being duplicative and excessive.

■ As is set forth in the terms of ¶ 12 of the mortgage, Bowery is entitled to only applicable statutory costs, allowances and disbursements.

Bedford argues that the costs, allowances and disbursements that Bowery may recover are limited to those provided for in N.Y. C.P.L.R. articles 82 and 83. This contention must be rejected. The term "statutory costs, allowances and disbursements" is general and does not require reference to the statutes of a particular jurisdiction. If reference to N.Y. C.P.L.R. articles 82 and 83 had been intended by the parties, it would have been simple enough to make that clear by the inclusion of such a reference in ¶ 12 of the mortgage. In the absence of such a specific contractual provision, federal law is controlling on the amount of reasonable disbursements and charges Bowery may recover. *See Conte v. Flota Mercante Del Estado,* 277 F.2d 664, 671–72 (2d Cir. 1960); C. Wright & A. Miller, *Federal Practice and Procedure* § 2669 (1973).

Under 28 U.S.C. § 1920, the following items may be taxed as costs:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript . . . ;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under [28 U.S.C. § 1923];

The disbursements and charges incurred by Bowery are contained in Schedules II and III of the referee's report. Under Schedule II, Bowery seeks to recover $12,965.16 for printing costs, $3,010.50 for transcripts, $7,529.00 for deposition costs, and $42,000 for the cost of the first appraisal of 120 Church Street by James G. Peel.

■ The findings of the referee with respect to these charges are in all respects adopted. First, Bowery may recover the amounts claimed for transcripts and depositions. Second, Bowery may recover only to the extent of $25,000 for Peel's appraisal since there was no satisfactory reason why he was retained only four days before trial. Third, Bowery may recover printing costs in the amount of $8665.16 which reflects a reduction of the amount claimed by $4300 to account for excessive expenses attributable to "author's alterations."

■ Under Schedule III, Bowery seeks to recover for expenses incurred for duplicating, lexis, vydec and word processing, bookkeeping, meals, lodging, travel expenses, overtime, mail, publications, transcripts, telephone and telecopy, search fees and other miscellaneous charges. In accordance with 28 U.S.C. § 1920, Bowery may recover duplicating costs in the amount $9,207.03. In addition, in accordance with N.Y. C.P.L.R. § 8301(a)(10) (McKinney 1981), Bowery may recover $180.00 in search fees. All other costs claimed in Schedule III are out of pocket expenses which are not recoverable under § 1920 and are disallowed. *See Richerson v. Jones,* 506 F.Supp. 1259, 1267 (E.D. Pa. 1981); C. Wright & A. Miller, *Federal Practice and Procedure* § 2677 at 223–26.

## FEES SINCE NOVEMBER 2, 1981

Bowery's proposed order and judgment provides for the establishment of a reserve fund from the proceeds of the sale to cover Bowery's attorneys' fees and expenses for the period subsequent to November 1, 1981, ¶ 5(d). In order to assist the court in determining the amount of the reserve, Bowery has submitted an affidavit of services rendered, time spent and expenses incurred by its attorneys during the period from November 2, 1981 and June 27, 1982. As set forth in that affidavit, Bowery has requested $208,648.80 for fees, disbursements and charges incurred during this period. The affidavit also sets forth Cadwalader's estimate that additional legal fees that will be incurred between June 27, 1982 and completion of the foreclosure sale will amount to at least $20,000.

Although it is apparent that the parties contemplated that Bowery's fees for the period from November 2, 1981 to June 27, 1982 would be the subject of further submissions, I am of the opinion that the matter can be decided without such submissions based on the prior record in this case. It is clear from Cadwalader's time sheets submitted to and the testimony adduced before the referee that Cadwalader has overstaffed this case and has billed for duplicative and excessive services. It not only is reasonable to assume that this method of staffing was continued through the period in issue but it is clear from the papers submitted by Cadwalader in support of Bowery's application that this was the case. The affidavit of Terence F. Gilheany, Esq. sworn to July 2, 1982 reveals that for the period at issue, fifteen attorneys and various legal assistants worked on these cases. Consequently, based on the record adduced before the referee, the Gilheany affidavit and my observation and knowledge of the proceedings in this case between November 2, 1981 and June 27, 1982, the matter of Bowery's fees can and will be decided at this juncture.

The attorney's fees requested for the period between November 2, 1981 and June 27, 1982 are broken down as follows:

| Attorney | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| T. F. Gilheany | 221.2 | $174 | $38,483 |
| H. F. Hawkins | 332.2 | $123 | $40,862 |
| J. F. Mariani | 638.57 | $96 | $61,296 |
| A. Rothschild | 286.7 | $67 | $19,231 |
| J. E. Lawlor | 5.5 | $135 | $743 |
| V. DiLorenzo | 2.2 | $96 | $208 |
| R. Finke | 0.3 | | |
| T. Connolly | 0.2 | | $72 |
| J. Artabane | | | $22 |
| W. Erickson | | | $156 |
| K. H. Chin | 3.8 | $76 | $291 |

| Attorney | No. of Hours | Hourly Rate | Total |
|----------|-------|------|-------|
| T. J. Cerna | 1.8 | $123 | $226 |
| R. Johnson | | | |
| J. Verga | 12.3 | | $458 |
| C. Meyer | | | |
| Legal Assistants | 80.2 | | $3,827 |
| TOTAL | | | $165,875 |

In accordance with my analysis of the reasonable counsel fee recoverable by Bowery earlier in this opinion, fees for Cadwalader attorneys for services rendered between November 2, 1981 and June 27, 1982 are allowed as follows:

1. Terence F. Gilheany: 100 hours at $174 per hour for a total of $17,400.
2. Howard H. Hawkins: 150 hours at $123 per hour for a total of $18,450.
3. John F. Mariani: 200 hours at $96 per hour for a total of $19,200.

In accordance with the above, Bowery is entitled to attorneys' fees in the sum of $55,050 plus costs as follows for the period between November 2, 1981 and June 27, 1982. All requests for attorneys' fees for the remaining associates, legal assistants, the managing attorney and his staff are disallowed as being duplicative and excessive.

In accordance with my prior rulings with respect to statutory costs, allowances and disbursements, Bowery may recover only for the costs of printing, transcripts, and the appraisal fee of James Peel. The amount that may be recovered by Bowery for Peel's appraisal is reduced to $12,000 since his report merely repeated much of the information in his original report and did not add anything of substance. Accordingly, Bowery may recover $2,796.10 for printing costs, $2,351.75 for transcripts, and $12,000.00 for the costs of Peel's second appraisal of 120 Church Street. In addition, Bowery may recover its duplicating costs for the period between November 2, 1981 and June 27, 1982. Cadwalader is directed to submit an affidavit establishing that cost forthwith.

In accordance with the above, Bowery may recover counsel fees and statutory costs, allowances and disbursements for the period between November 2, 1981 and June 27, 1982 in the amount of $72,197.85 plus the cost of duplicating as set forth above, with interest as provided in ¶ 12 of the mortgage.

The next issue is the amount that is to be set aside as a reserve for expenses incurred by Bowery from June 27, 1982 through the foreclosure sale. Bowery has estimated its fees for this period to be $20,000. This amount is reasonable and will be incorporated into the reserve.

Finally, it is the opinion of this court that Bowery may not recover for legal fees incurred in connection with this application for fees under the terms of ¶ 12 of the mortgage. Accordingly, any request therefore will be disallowed.

## CONCLUSION

In accordance with the above, Bowery may recover counsel fees and statutory costs, allowances and disbursements for the period between the commencement of the litigation and November 1, 1981 in the amount of $255,806.79 plus the cost of paralegals as set forth above with interest as provided in ¶ 12 of the mortgage. A reserve in the amount of $125,000.00 is to be set aside from the proceeds of the sale to cover Bowery's attorneys' fees and statutory costs, allowances and disbursements for the period on and after November 2, 1981.

SO ORDERED.